IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:12cv285

| | |
|---|---|
| DAN SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM AND** |
| CAROLYN W. COLVIN, ) | **RECOMMENDATION** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for social security disability insurance benefits. This case came before the Court on the administrative record and the parties' Motions for Summary Judgment [# 9 & # 17]. The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 17], **DENY** Plaintiff's Motion for Summary Judgment [# 9], and **AFFIRM** the Commissioner's decision.

I. **Procedural History**

Plaintiff filed an application for disability insurance benefits on October 3, 2008. (Transcript of Administrative Record ("T.") 143.) Plaintiff alleged an onset

date of October 26, 2007. (T. 143.) The Social Security Administration denied Plaintiff's claim. (T. 82-85.) Plaintiff requested reconsideration of the decision, which was also denied. (T. 89-90.) A disability hearing was then held before an Administrative Law Judge ("ALJ"). (T. 42-64.) The ALJ then issued a decision finding that Plaintiff was not disabled through the date of the decision. (T. 23-35.) Plaintiff requested review of the ALJ's decision, which was denied by the Appeals Council (T. 1-3). Plaintiff then brought this action seeking review of the Commissioner's decision.

## II. Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); see also Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Under this inquiry, the Commissioner must consider in sequence: (1) whether a claimant is gainfully employed; (2) whether a claimant has a severe impairment that significantly limits her ability to perform

basic work-related functions; (3) whether the claimant's impairment meets or exceeds the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform her past relevant work; (5) whether the claimant is able to perform any other work considering her age, education, and residual functional capacity.  Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 654 n.1; 20 C.F.R. § 404.1520.  If at any stage of the inquiry, the Commissioner determines that the claimant is or is not disabled, the inquiry is halted.  20 C.F.R. §§ 404.1520(a) and 416.920(a).

**III.	The ALJ's Decision**

In his February 15, 2011, decision the ALJ found that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act.  (T. 34.)  The ALJ made the following specific findings:

(1)	The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

(2)	The claimant has not engaged in substantial gainful activity since October 26, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*)

(3)	The claimant has the following severe impairments: cervical degenerative disc disease, chronic neck and left shoulder pain, depression and anxiety, and seizure-like episodes  (20 CFR 404.1520(c)).

(4)	The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

-3-

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, repetitive routine light work as defined in 20 CFR 404.1567(b) that allows frequent stooping, kneeling, crouching and crawling; occasional climbing of stairs and ramps, balancing, and concentrated exposure to hazards; that involves no climbing of ropes/ladders/scaffolds or overhead reaching with the left upper extremity; and that involves working with things rather than people.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on August 31, 1974 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the nation economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from October 26, 2007, through the date of this decision (20 CFR 404.1520(g)).

(T. 25-34.)

## IV. Standard of Review

Section 405(g) of Title 42 provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review, however, is limited. The Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id. When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

V. Analysis[1]

A. The Evidence Submitted to the Appeals Council does not Require Remand

In seeking review of a decision of an ALJ, a claimant may submit evidence to the Appeals Council that was not presented to the ALJ. Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011). Where a claimant presents new and material evidence to the Appeals Council that relates to the period on or before the date of the ALJ's decision:

> The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970; see also Meyer, 662 F.3d at 705. If, however, after a review of all the evidence in the record, including the new and material evidence, the Appeals Council determines that the decision of the ALJ is not contrary to the weight of the evidence, the Appeals Council may deny a claimant's request for review. Meyer, 662 F.3d at 705. Where the Appeals Council incorporates the new evidence into the record but denies the request for review, the question for this Court is whether, considering the record as a whole (including the new evidence

---

[1] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

submitted to the Appeals Council), the decision of the ALJ is supported by substantial evidence in the record. Wilkins v. Sec'y, Dep't Health Human Servs., 953 F.2d 93, 96 (4th Cir. 1991); see also Ellis v. Colvin, No. 2:12-cv-00018-MOC-DLH, 2013 WL 3976623 (W.D.N.C. Aug. 2, 2013) (Cogburn, J.) (unpublished).

As part of Plaintiff's request for review by the Appeals Council of the ALJ's decision, Plaintiff submitted additional medical records from Mission Hospital dated January 15, 2011, through January 16, 2011 (T. 641-57), as well as a June 8, 2011, correction to the medical records by Dr. Lauren Livingston (T. 658). In reaching its decision to deny Plaintiff's request for review, the Appeals Council explicitly considered this additional evidence and made it part of the record. (T. 1-2, 4.) The Appeals Council, however, found that the additional evidence did not provide a basis for altering the decision of the ALJ. (T. 2.) Plaintiff now contends that remand is required in this case in order for the ALJ to consider the addition evidence submitted to the Appeals Council.

Upon a review of the entire record, including the new evidence submitted to the Appeals Council, the Court finds that the decision of the ALJ is supported by substantial evidence in the record, and the new evidence does not require remand.[2] Moreover, none of the new evidence requires remand. The Mission Hospital

---

2   Although the Court finds that based upon its review of the entire record, the decision of the ALJ is supported by substantial evidence in the record, the Court limits its discussion to the issue presented by the Plaintiff: whether the new evidence requires remand.

records upon which Plaintiff primarily relies are the one-time examinations by emergency room medical personnel related to the January 15, 2011, involuntary petition filed by his wife as a result of a potential overdose and suicidal or homicidal threats. (T. 642-57.) These records, however, provide no new evidence supporting his claims for disabling cervical spine, brain, or mental impairments. The statements regarding Plaintiff's alleged traumatic brain injury in 2000 where based on Plaintiff's statements as to his medical history, as well as the December 5, 2009, Preoperative History of Dr. Geobel that was before the ALJ when he rendered his decision. (T. 501-02.) Similarly, evidence of Dr. Goebel's prior surgical procedure was also before the ALJ. (T. 501-02, 507-11.) There is nothing in the new medical records that contradict the existing records before the ALJ or otherwise call into question the decision of the ALJ as to Plaintiff's brain injury or cervical spine problems.

Similarly, the fact that the medical records reflect that Plaintiff was prescribed psychiatric medications does not require remand. Dr. Schacht did not testify that the evidence was devoid of records of Plaintiff receiving psychiatric treatment or being prescribed psychiatric medications but, rather, that the record contained no records that Plaintiff was undergoing *psychotherapy.* (T. 58.) As Dr. Schacht explained, "I would note that such records are potentially relevant

particularly since it's very difficult to comprehend how he could participate in psychotherapy if in fact his memory is as bad as it is here. It's not clear whether he would be able to talk about it." (T. 58.) In contrast to Plaintiff's contention to the contrary, nothing in the new evidence contradicts this statement or otherwise calls into question the findings and decision of the ALJ as to Plaintiff's mental impairments.

Finally, the correction by Dr. Livingston to the prior statement regarding Plaintiff stating that he complained of neck pain after doing some work with a hammer (T. 597, 658) does not require remand. Although both Dr. Schacht (T. 57) and the ALJ (T. 30) noted in passing that Plaintiff reported neck pain after working with a hammer, this fact was a very minor aspect of the overall decision; the remaining evidence in the record is more than sufficient to constitute substantial evidence supporting the decision of the ALJ. Accordingly, after considering all the evidence in the record, the Court finds that the decision of the ALJ is supported by substantial evidence in the record, and the new evidence submitted to the Appeals Council does not require remand in this case.

    **B.**    **The ALJ did not err in Evaluating Plaintiff's Subjective Complaints of Pain**

Plaintiff contends that the ALJ failed to properly consider the Plaintiff's

statements regarding his pain and symptoms. Specifically, Plaintiff contends that the ALJ's credibility determination is: (1) not entitled to deference by this Court, (2) is not supported by substantial evidence in the record, and (3) the ALJ failed to apply the proper legal standard.

As an initial matter, the Court recognizes that it is not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig, 76 F.3d at 589. Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility and whether the ALJ's decision is supported by substantial evidence. Id.

In assessing a claimant's statement of pain and other symptoms, the ALJ applies a two part process. Id. at 594; Hines, 453 F.3d at 565. First, the ALJ must assess whether there is a medically determinable physical impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. §404.1529(c)(1); Craig, 76 F.3d at 595; Hines, 453 F.3d at 565. If the ALJ finds that a claimant suffers such an impairment and that the impairment could reasonably be expected to produce the symptoms of pain of which claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. 2010).

At the second step, the ALJ must evaluate the intensity and persistence of

the pain, as well as the extent to which the claimant's symptoms and pain impact his or her ability to work. 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at 595. "This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus the ALJ must consider conflicts between the claimant's statements and the rest of the evidence." Aytch, 686 F. Supp. 2d at 604. This evaluation takes into account all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, other objective medical evidence, and testimony or statements from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1) & (2); Craig, 76 F.3d at 595.

Here, the ALJ applied this two-step process in assessing Plaintiff's statements regarding his symptoms. (T. 27-33.) The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleged. (T. 31.) The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (T. 32.) The ALJ provided detailed and specific reasons for why he found Plaintiff's testimony not fully credible. (T. 32-

33.) The ALJ found that Plaintiff exaggerated during his testing, gave poor effort during his testing, and had irregularities on his drug testing. (T. 33.) The ALJ also pointed to the numerous inconsistencies in the record. (T. 32-33.)

There is sufficient evidence in the record supporting the credibility determination of the ALJ. For example, the evidence reflects that Plaintiff might have been giving poor effort during his testing and exaggerating his symptoms. (see e.g. T.54-55, 427.) Moreover, Plaintiff's brain CT scans were normal. (T. 584.) Finally, the ALJ did not err in his credibility determination by relying, in part, on the testimony of Dr. Schacht. Because Dr. Schacht's testimony was consistent with the medical record, the ALJ was entitled to accord it great weight and consider it along with the other opinions, testimony, and medical evidence in the record in reaching his decision as to credibility. 20 C.F.R. § 404.1529(c)(1) & (2); Craig, 76 F.3d at 595; Johnson, 434 F.3d at 657.[3]

Although Plaintiff may disagree with the result that the ALJ reached based on the application of this two-step process, the record is clear that the ALJ applied the correct legal standard in assessing Plaintiff's credibility, and it is not the role of

---

3   Plaintiff's contention that the ALJ's credibility determination is not entitled to the ordinary standard of review by this Court is without merit. The ALJ had the opportunity to observe Plaintiff, asked Plaintiff several questions, and considered his testimony in connection with all the evidence in the record in making his credibility determination. The fact that Plaintiff's testimony took less time than that of the experts and that the ALJ did not specifically discuss Plaintiff's demeanor at the hearing or his written statements to Disability Determination Services is immaterial. The standard of review that Plaintiff advocates the Court utilize in this case is not supported by the cases cited by Plaintiff and not supported by the law of this Circuit.

this Court to re-weigh the evidence and determine whether Plaintiff's testimony is credible. See Craig, 76 F.3d at 589. The Court finds that the ALJ's determination that Plaintiff's testimony was not fully credible was the result of the application of the proper legal standard and is supported by substantial evidence in the record.

### C. The ALJ Adequately Developed the Record

The ALJ is required "to explore all relevant facts and inquire into the issues necessary for adequate development of the record . . ." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The Commissioner also has the responsibility of developing the complete medical history for the claimant. 20 C.F.R. § 404.1512(d). In addition, where the evidence submitted by the claimant is inadequate to make a decision as to whether the claimant is disabled, the ALJ cannot rely on this evidence alone. Id. "Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980).

Plaintiff contends that the ALJ erred by failing to fully and fairly develop the record because he did not make reasonable efforts to obtain Plaintiff's medical records related to Plaintiff's head injury caused by a motorcycle accident in 1999 or 2000. The record before the ALJ, however, was sufficiently complete for the ALJ

to render a decision as to whether Plaintiff was disabled; the ALJ did not fail in his duty to adequately develop the record. Plaintiff alleged disability beginning October 26, 2007, seven years after a motorcycle accident in which he was injured. After the accident, Plaintiff continued working a standard forty-hour work week as a maintenance technician. (T. 158, 162.) In addition, MRI and EEG examinations of Plaintiff's brain during the relevant time period were normal. (T. 284, 632.) The record before the ALJ was sufficiently complete for the ALJ to render a decision as to the current symptoms and pain that Plaintiff suffered as a result of his various impairments. Because the medical records in this case were reasonably complete, the ALJ did not err by failing to obtain any additional medical records or otherwise failing to more fully develop the record.

The Court, however, acknowledges that Dr. Schacht and the ALJ both erred in failing to acknowledge the 2008 note of Dr. Daniel Meigs confirming the prior motorcycle accident and the fact that Plaintiff was in a coma as a result. (T. 358.) This minor error by the ALJ, however, is insufficient to require remand based on the large number of reasons provided by the ALJ for finding that Plaintiff's testimony was not fully credible, including the finding of the ALJ that Plaintiff was giving poor effort on his testing, exaggerating on testing, the other inconsistences in the record, and the irregularities of Plaintiff's drug test. (T. 33.) Accordingly,

any such error was harmless as remand would not lead to a different result. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Morris v. Bowen, 864 F.2d 333, 335 (5th Cir.1988); see also Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir.2005) (unpublished) (applying harmless error doctrine in context of Social Security case); Dover v. Astrue, No. 1:11cv120, 2012 WL1416410, at *5 (W.D.N.C. Mar. 19, 2012) (Howell, Mag. J.) (unpublished); Clore v. Colvin, No. 2:13-CV-00023-FDW, 2014 WL 294640, at *4 (W.D.N.C. Jan. 27 2014) (Whitney, C.J.) (unpublished); Darby v. Colvin, No. 1:12-CV-00295-MR-FDW, 2013 WL 4509662, at *5 (W.D.N.C. Aug. 23, 2013) (Whitney, C.J.). Remand is not required for the ALJ to more fully develop the record in this case or to reconsider Plaintiff's credibility.

> **D.     The ALJ did not err in Considering the Medical Opinion of Dr. Kathleen Marcus**

In evaluating and weighing medical opinions, the ALJ considers: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d, 653 (4th Cir. 2005);

see also 20 C.F.R. § 404.1527. The ALJ, however, will give a treating source's opinion "controlling weight" where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. § 404.1527(d)(2); Mastro, 270 F.3d at 178. As the Fourth Circuit explained in Mastro:

> Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. See Hunter, 993 F.2d at 35.

270 F.3d at 178.

Statements by medical sources that a patient is disabled, unable to work, or meets the listing requirements are not medical issues, but are administrative findings reserved for the Commissioner. SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996). Because they are administrative findings, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." Id.

In addition, the ALJ must provide a good reason in the notice of the determination or decision for the weight he or she gives a claimant's treating source opinions. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 WL 374188 (Jul.

2, 1996). Social Security Ruling 96-2p further provides that:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

In contrast to the opinion of a treating source, the opinion of a consultative examiner is not entitled to controlling weight. See generally SSR 96-2P, 1996 WL 374188, at *2 (July 2, 1996). A consultative examiner is a nontreating medical source. See 20 C.F.R. § 404.1502. As the pertinent regulation explains:

> Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you. The term includes an acceptable medical source who is a consultative examiner for us, when the consultative examiner is not your treating source.

20 C.F.R. § 404.1502. Of course, the ALJ may still give "great weight" to the opinion of a nontreating source and, under the right circumstances, may even find that it is entitled to greater weight than that of a treating source. See SSR 96-2P.

Plaintiff contends that the ALJ erred by assigning only partial weight to the opinion of Kathleen Marcus, Psy. D, a State agency consultant examining psychologist. Here, the ALJ evaluated the opinion of Dr. Marcus in accordance with the requirements of 20 C.F.R. § 404.1527 (T. 27) and determined that her decision was only entitled to partial weight (T. 33). Specifically, the ALJ found

that "[a]though [the opinion of Dr. Marcus] is somewhat consistent with the CE findings and the totality of the evidence in the file, it is deemed questionable due to possible malingering based on a TOMM testing." (T. 33.)

The decision of the ALJ to assign only partial weight to the opinion of Dr. Marcus is supported by substantial evidence in the record and was not the result of legal error. In fact, Dr. Marcus herself noted that Plaintiff's scores on the Test of Memory Malingering raised questions regarding his level of effort for the test and his session. (T. 427.) Dr. Marcus also noted "numerous inconsistencies" in considering the test results and Plaintiff's presentation. (T. 427-28.)

> For example, he frequently said that he could not remember things, yet he could recall some other information that would tap into the same mental process. He had a keen awareness of what he could not remember. He reported being able to play video games, Play Station and work on the computer. He reported that he had been reading recently and trying to improve his memory. During testing, he had no difficult understanding the directions, but yet, he had difficulty understanding some of my questions in the interview; the questions were very concrete compared to the instructions for the WAIIS-III and WMS-III. . . Additionally the results of the TOMM raise the question of the authenticity of his efforts. In light of these things it seems very questionable as to whether or not the scores from the WAIS-III and WMS-III provide an accurate measure of his cognitive and memory functioning.

(T. 427-28.) Moreover, Dr. Schacht also noted Plaintiff's possible poor effort during psychological testing and the questionable results from that testing. (T. 56-57.) Based on all the evidence of the record, the Court finds that the ALJ was

-18-

certainly justified in only assigning partial weight to the opinion of Dr. Marcus as the result of Plaintiff's potential malingering. Substantial evidence in the record supports this decision.

Finally, the Court notes that Plaintiff's contention that the ALJ actually interpreted the raw psychological data and substituted his own independent medial determination about Plaintiff's condition is without merit. As the record and the decision of the ALJ reflect, the ALJ accurately summarized the evidence in the record and relied upon the testimony of medical experts, including Dr. Schacht, in reaching his decision. This is not a case where the ALJ rejected the opinion of a medical expert and substituted his own medical determination about Plaintiff's condition. Accordingly, the Court finds that the ALJ did not err in assigning only partial weight to the opinion of Dr. Marcus and remand is not required in this case.

## VI. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 17], **DENY** the Plaintiff's Motion for Summary Judgment [# 9], and **AFFIRM** the Commissioner's decision.

Signed: March 3, 2014

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).